UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT HAUGHTON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:14-cv-1974 (VLB) |
| | : | |
| TOWN OF CROMWELL and | : | |
| CROMWELL POLICE DEPARTMENT, | : | July 5, 2017 |
| | : | |
| Defendants. | : | |

MEMORANDUM OF DECISION GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. 43] AND
DEFENDANTS' MOTION TO STRIKE [DKT. 52]

I.   **Introduction**

Plaintiff Robert Haughton, a police officer for the Cromwell Police

Department, brings this action under Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. § 2000e *et seq.*, against Defendants Town of Cromwell ("Town")

and Cromwell Police Department ("CPD").  For the reasons that follow,

Defendants' Motion for Summary Judgment [Dkt. 43] and Defendants' Motion to

Strike [Dkt. 52] are GRANTED.

II.   **Procedural History**

On November 25, 2013, Plaintiff filed a complaint with the Connecticut

Commission on Human Rights and Opportunities, claiming that he was denied a

promotion on the grounds of his race, national origin, and because he had

previously complained of discriminatory conduct.  [*See* Dkt. 1 at 13-14].  Plaintiff

received a right to sue letter from the Equal Employment Opportunity

Commission on December 19, 2014, and filed a complaint in this Court on

December 30, 2014, in which he alleged that in 2006 he "was not assigned to School Resource officer due to accent and the town being political" and that in 2013, he was "unfairly denied promotion and special assignments because of [his] race and ethnic background." *See id.* at 1-8. Defendants filed a Motion to Dismiss on May 11, 2015, [Dkt. 18], which the Court granted in part and denied in part on March 7, 2016, [Dkt. 30]. In this Order, the Court held that the case could proceed "to the extent that the Plaintiff's Complaint, liberally construed, alleges that he was passed over for assignment to detective in 2013 as a result of his race, national origin or ethnicity, and that his employers' comments in 2006 are merely evidence of discriminatory animus." *Id.*

Plaintiff filed a Motion to Amend the Complaint on May 22, 2016, seeking to add allegations of sex discrimination and retaliation under Title VII. [Dkt. 35]. zThe Court denied this motion on March 7, 2017 on the grounds that the Plaintiff did not exhaust administrative remedies as to the sex discrimination claim, and did not raise his retaliation claim within ninety days of receiving a right to sue letter. [Dkt. No. 57].

Defendants filed the instant Motion for Summary Judgment on October 14, 2016, arguing that the Plaintiff raised no material issue of fact that the Defendants' decision not to make him a detective occurred under circumstances that give rise to an inference of discrimination or was motivated by discriminatory animus. [Dkt. 43]. In his Opposition, the Plaintiff filed witness statements from CPD officer James Tolton and former CPD chief Edwin Kosinski that had not previously been disclosed to the Defendants. [Dkt. 45-7; Dkt. 48-1]. Defendants

moved to strike or preclude consideration of these witness statements on December 6, 2016. [Dkt. 52].

III. <u>Motion to Strike</u>

During discovery, Defendants served on Plaintiff an interrogatory requesting that Plaintiff "[i]dentify all individuals (other than your attorneys) with whom you have at any time discussed this lawsuit, the grounds for this lawsuit, or your belief that the defendants acted unlawfully or illegally toward you, and describe in the detail the substance of each discussion." [Dkt. 52-4, Interrogatory 3]. Plaintiff responded that he discussed "what steps [he] should take in pursuing [his] lawsuit" and "expressed [his] dissatisfaction with the manner in which [he] was treated in the department due to [his] origin and nationality" with Jason Tolton, Joseph DiMauro, David Gorski, Frederick Gengler, and "co-worker[]s, friends and family." *Id.* Defendants also served requests for production in which they sought "written and recorded statements of any witnesses or party identified in response to the above interrogatories, or any notes, diaries or chronologies that you prepared or maintained regarding this dispute." [Dkt. 52-4 at RFP 2]. Plaintiff produced no documents in response to this request, and discovery closed on September 1, 2016.

On November 5, 2016, Plaintiff filed his Opposition to Defendants' Motion for Summary Judgment [Dkt. 46], attaching two statements: one signed by Tolton and dated June 30, 2016, and a second signed by Kosinski and dated May 24, 2016. [Dkt. Nos. 45-7, 46-1]. Plaintiff offers Tolton's and Kosinski's statements as evidence that (1) the Plaintiff was denied assignment to CPD's Detective Division

under circumstances giving rise to an inference of discrimination because Tolton heard Officer Pamela Young state, "well the chief don't like black people anyway"; and (2) Young, who was awarded the detective assignment that Plaintiff wanted, was unqualified because she "did not pass the psychological screen required by the Cromwell Police Department when she was hired . . . [and] Denise Lamontagne . . . gave Young a pass despite her failure of the psychological screen." *See id.* Neither of these statements were signed under the penalties of perjury or notarized. Defendants object to the consideration of these statements on summary judgment because Plaintiff failed to disclose them during discovery, and because the statements reference information that is inadmissible or irrelevant.

A.  Failure to Disclose

Pursuant to Federal Rule of Civil Procedure 37(c), "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Rule 26(a) requires, *inter alia*, the disclosure of individuals likely to have discoverable information, Fed. R. Civ. P. 26(a)(1)(A), and Rule 26(e) requires parties to correct or supplement their Rule 26(a) disclosures and their discovery responses, upon learning "that in some material respect the disclosure is incomplete or incorrect," Fed. R. Civ. P. 26(e)(1)(A). There is nothing in the record indicating that Plaintiff ever disclosed Kosinski as a potential witness, and Plaintiff did not produce to Defendants either Kosinski's or Tolton's statement upon obtaining it.

To determine whether excluding undisclosed evidence is warranted, the Court must consider "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Haas v. Delaware & Hudson Ry. Co.*, 282 F. App'x 84, 86 (2d Cir. 2008) (quoting *Patterson v. Balsamico,* 440 F.3d 104, 117 (2d Cir. 2006) (alteration in original)). "The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence." *Id.* (quoting *Ebewo v. Martinez,* 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004)). No showing of bad faith is required to exclude evidence under Rule 37. *Id.* (citing *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir.2006)) (holding that exclusion was appropriate where late discovery was due to unexplained neglect and not bad faith).

The only explanation Plaintiff offers for his failure to produce the statements is "simple inadvertence." [Dkt. 54 at 1]. Inadvertence does not constitute substantial justification for failure to disclose. *See Haas*, 282 F. App'x at 86 (upholding district court determination that plaintiff "failed to offer any justification for the delay" where the failure to disclose was "an unintentional oversight due to [plaintiff's] lack of appreciation of [the witness's] knowledge"). The first prong of the analysis therefore weighs in favor of exclusion.

With respect to the second prong, the proffered evidence is of limited importance, given that it provides only tenuous evidence that the Plaintiff was denied a promotion under circumstances giving rise to an inference of

discrimination and that the woman who received the promotion was less qualified than the Plaintiff.  The weakness of this evidence is discussed further in the Court's discussion of the statements' admissibility.  *See* Section III.B., *infra*.

The third prong also supports exclusion.  While Tolton was disclosed as an individual with knowledge of the case, his assertions regarding Lamontagne's attitude toward African Americans were unknown to the Defendants when they moved for summary judgment.  Had Defendants been aware of these assertions during the discovery period, they could have deposed Tolton or conducted other related discovery.  Similarly, Kosinski was never disclosed during discovery, and in the absence of disclosure, the Defendants did not have the opportunity to seek discovery relating to Young's qualifications from him.  Plaintiff's failure to disclose the statements is therefore prejudicial.

As to the fourth prong, granting a continuance at this stage of litigation to permit discovery relating to the two statements would cause substantial delay and inefficiency—discovery has now been closed for months and reopening it would require amending all remaining dates in the scheduling order.  Taken together, these four factors counsel in favor of excluding Tolton's and Kosinski's statements under Rule 37(c)(1).  Because Plaintiff's failure to disclose was neither substantially justified nor harmless, Plaintiff may not rely on these statements to support his opposition to summary judgment.

### B.  Admissibility

Even if the statements had been disclosed during discovery, Tolton's comment regarding Lamontagne's feelings about African Americans is

inadmissible, Kosinki's information regarding Young's psychological evaluation is irrelevant, and the statements themselves do not meet the requirements set forth in Federal Rule of Civil Procedure 56.

Pursuant to Rule 56(c)(4), "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "The principles governing admissibility of evidence do not change on a motion for summary judgment." *Schaghticoke Tribal Nation v. Kempthorne*, 587 F. Supp. 2d 389, 395 (D. Conn. 2008), *aff'd*, 587 F.3d 132 (2d Cir. 2009) (quoting *Merry Charters, LLC v. Town of Stonington*, 342 F. Supp. 2d 69, 75 (D. Conn. 2004)).

Tolton's statement he heard Officer Pamela Young state, "well the chief don't like black people anyway" is rank inadmissible hearsay and does not even rise to the level of inadmissible double hearsay. Tolton's statement contains nothing to suggest that Tolton had any personal knowledge of Lamontagne's alleged statement or her feelings toward African Americans, as required by Federal Rule of Civil Procedure 56(c)(4) and Federal Rule of Evidence 602. Instead, Tolton's statement relates Young's opinion of Lamontagne's feelings. Tolton does not relate any statement which Young attributed to Lamontagne or any facts upon which Young's opinion is based.

Similarly, while Kosinski's statement contains sufficient evidence to show that he had personal knowledge of Young's failure to pass the CPD psychological screen when she was hired, the relevance of this fact is limited because Young was in fact hired, and she was promoted to the detective position two years after she was hired. Notwithstanding, there is nothing in the record validating the test's findings. Nor is there anything in the record to suggest that Young would have failed the psychological screen when she was promoted, or that passing the psychological screen is a necessary qualification for serving as a detective.

Even if the evidence contained in the statements were admissible and relevant, "documents submitted in opposition to a summary judgment motion must be properly authenticated in order to be considered by the court at [the] summary judgment stage." *Barlow v. Connecticut*, 319 F. Supp. 2d 250, 257 (D. Conn. 2004), *aff'd sub nom., Barlow v. Dep't of Pub. Health, Connecticut*, 148 F. App'x 31 (2d Cir. 2005); *see also Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) ("[P]roper admission requires a determination on relevance and authenticity."). The Court may exercise its discretion to consider documents that have not been properly authenticated if no objection has been raised. *H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454 (2d Cir. 1991); *see also Delgado v. City of Stamford*, No. 3:11-CV-01735-VAB, 2015 WL 6675534, at *5 n.3 (D. Conn. Nov. 2, 2015) ("[T]he court has the discretion to consider unauthenticated or otherwise objectionable evidence where it is apparent that the party may be able to authenticate and establish the admissibility of those documents at trial."); Charles A. Wright & Arthur R. Miller, et al., 10A Fed. Prac. &

Proc. Civ. § 2722 (2016) ("[D]ocuments inadmissible under the evidence rules may be considered by the court if not challenged."). However, the Court may also correct evidentiary errors on its own initiative. *See Bellard v. Gautreaux*, 675 F.3d 454, 461 (5th Cir. 2012) (holding that the rule allowing courts to consider unobjected-to evidence is permissive rather than mandatory); *see also United States v. Pisani*, 773 F.2d 397, 402 (2d Cir. 1985) (stating that if counsel "pursues an objectionable line of questioning, he can hardly cry 'foul' when the judge . . . excludes the testimony *sua sponte*."). Therefore, while Defendants have not specifically objected to the statements' authenticity, the Court may in its discretion exclude the unsworn statements. While the Federal Rules no longer require formal, notarized affidavits, they do—at minimum—require that supporting declarations be subscribed as true under penalty of perjury, pursuant to 28 U.S.C. § 1746. Fed. R. Civ. P. 56 – 2010 Amendment Committee Notes. Neither of the challenged statements meets this requirement.

Given that (1) the statements at issue were not disclosed during discovery and Kosinski was never disclosed as a person with discoverable information; (2) the evidence contained within the statements is inadmissible or irrelevant; and (3) the statements themselves are not properly authenticated, the Court GRANTS Defendants' Motion to Strike. The Tolton and Kosinski statements will not be considered as part of the record on summary judgment.

IV.  **Motion for Summary Judgment**

  A.  **Factual Background**

The Town operates a paid professional police department, employing approximately twenty-six sworn police officers.  [Dkt. 43-4 ("Lamontagne Aff.") ¶ 3].  From March 1992 until on or about September 15, 2015, Anthony J. Salvatore served as the CPD's Chief of Police.  [Dkt. 43-6 ("Salvatore Dep.") at 7; Dkt. 43-7 ("Lamontagne Dep.") at 18].  From on or about September 21, 1990 until on or about September 15, 2015, Denise Lamontagne was employed by the CPD as a police officer, sergeant, and captain.  [Lamontagne Aff. ¶¶ 6].  Since September 16, 2015, she has served as Chief of Police.  *Id.* ¶ 7.

In 2013, the CPD employed one Chief of Police, one captain, five patrol sergeants, one detective sergeant, and various police officers.  *Id.* ¶ 4.  The sergeant, captain, and Chief of Police positions are called "promotional" positions.  [Dkt. 43-5 ("Haughton Dep.") at 48-49].  The selection process for sergeant is composed of a written exam (weighted as 50% of a candidate's total score), an oral exam (weighted as 40% of a candidate's total score), and the Chief of Police's evaluation (weighted as 10% of a candidate's total score).  [Lamontagne Aff. ¶ 10].

In addition to promotions, the CPD offers special assignments, which include, but are not limited to, school resource officer ("SRO"), bicycle patrol officer, child safety seat installer, field training officer ("FTO"), marine patrol, and detective.  *Id.* ¶ 13.  Unlike promotional positions, there is no formal process of appointment for a special assignment, and the Chief of Police exercises

discretion to appoint an individual he or she deems qualified based on a number of considerations, including but not limited to: the officer's skills, capabilities, performance, and ability to pass specialized training courses. *Id.* ¶ 14. The CPD does not have a formal seniority system. [Haughton Dep. at 122].

Special assignments (other than SRO) are often learned of through word of mouth. [Salvatore Dep. at 43; Dkt. 45-6 ("Haughton Aff.") ¶ 17]. To fill vacant special assignment positions, the Chief of Police or captain may approach an officer about the vacancy, or an officer may express interest in the vacancy to the Chief of Police or captain. [Salvatore Dep. at 20, 26]. Although CPD uses the same informal process to assign officers to SRO, bicycle officer, child safety seat installer, FTO, marine patrol, and detective positions, only officers assigned to the Detective Division receive a higher rate of pay. [Dkt. No. 46-1].

Plaintiff was hired by the Town on May 7, 2001 as a police officer. [Haughton Dep. at 18]. After his hiring, Plaintiff attended the Connecticut Police Officer Standards and Training Academy, during which he was placed on probation for failure to maintain a grade point average of at least 70 as a result of failing numerous courses. [Haughton Dep. at 28; Dkt. 43-8 at 1-5]. While tutoring was available, Plaintiff did not avail himself of that assistance. [Dkt. 43-8 at 6-8; Salvatore Dep. at 113]. Plaintiff testified during his deposition that as a result of failing to pass a couple of courses at the academy, Salvatore sought to have his employment terminated. [Haughton Dep. at 28]. This recommendation was not adopted by the Cromwell Police Commission, and Plaintiff ultimately graduated from the Academy. [Haughton Dep. at 28-30].

Following his graduation, Plaintiff began the CPD's formalized field training program, through which a recently graduated officer gains practical experience under the supervision of one or more seasoned officers. [Haughton Dep. at 34; Salvatore Dep. at 27]. Toward the end of the Plaintiff's field training program, Lamontagne—then holding the position of police officer—served as one of the Plaintiff's FTOs. [Lamontagne Dep. at 58-63]. At the conclusion of the field training program, Lamontagne recommended that Plaintiff's field training program be extended. *Id.* at 60-61. This recommendation was not adopted. *Id.*

Plaintiff claims that Lamontagne displayed animosity toward him by telling others in the department that he "should not be a police officer because [he] had co-signed on a loan, prior to [him] becoming an officer, for someone who years later committed a murder," and questioned him "working on overtime even though [he] had received permission from [his] immediate supervisor." [Haughton Aff. ¶¶ 19-20]. However, Plaintiff has also described his relationship with Lamontagne as "professional" and "cordial." [Haughton Dep. at 39-40].

Since the commencement of his employment with the Town, the only "promotional" position plaintiff has sought is sergeant. [Haughton Dep. at 49]. Plaintiff failed to achieve the minimum passing score on the sergeant's written examination in 2006. [Lamontagne Aff. ¶ 11]. Although he signed up to take the sergeant's exam again in 2014, he ultimately withdrew his application for that position. *Id.* ¶ 12. Additionally, Plaintiff did not take the sergeant's exam when it was offered in 2007, 2010, and 2012. *Id.* ¶ 11.

In or about 2004, Plaintiff was asked to serve as a bicycle patrol officer. [Haughton Dep. at 49-50]. He completed training to become proficient in police cycling and patrol tactics, and has served as a bicycle police officer since 2004. [Dkt. 43-11; Haughton Dep. at 43]. Plaintiff also asked to become an SRO in 2006, and was asked to serve as a child safety seat installer in 2007. [Haughton Dep. at 51, 110-11]. In connection with the child safety seat installer special assignment, Plaintiff twice failed to achieve the minimum passing grade on the written examination. *Id.* at 110-11. One of the Plaintiff's supervisors purportedly told Plaintiff that he would not be given the SRO assignment "due to [his] accent and the town being political," but Plaintiff did not identify this supervisor. [Dkt No. 1 at 17].

Shortly after being promoted to captain in December 2012 or January 2013, Lamontagne met with various CPD officers, including Plaintiff, and inquired about the officers' aspirations within the department to determine officers' interests. [Haughton Dep. at 60; Lamontagne Dep. at 23-24]. During his conversation with Lamontagne, Plaintiff stated that he was interested in the detective and FTO special assignments. [Haughton Dep. at 60]. In accordance with Plaintiff's interest, in February 2013, Captain Lamontagne offered Plaintiff a spot in a FTO training course, which Plaintiff would have needed to complete to become an FTO. [Haughton Dep. at 117-18; Salvatore Dep. at 29]. Due to Plaintiff being on vacation during the dates on which the training course was offered, he was unable to get the qualifying training. [Haughton Dep. at 117-18]. On or about September 27, 2017, Lamontagne informed Plaintiff that she wanted to send him

to a second FTO training course that was being offered in November 2013. [Haughton Dep. at 129; Lamontagne Aff. ¶ 22]. Plaintiff attended the November 2013 FTO training course, was certified to be an FTO, and has served as an FTO for CPD since that time. [Haughton Dep. at 44, 129-30; Lamontagne Aff. ¶ 23]. Salvatore testified that to qualify for this FTO position, Plaintiff demonstrated, *inter alia*, the following traits: (1) knowledgeable about the department's mission and goals; (2) above average initiative and self-motivation; (3) knowledgeable about current police procedures and department rules and regulations; (4) able to communicate effectively; and (5) able to interact well with others on a one-to-one basis; and (6) able to write in a clear, concise, and effective manner. [Salvatore Dep. at 33-37; Dkt. 45-5].

In addition to Plaintiff, other African American police officers have been given special assignments. For example, Officer Jason Tolton was previously appointed to the marine patrol and child safety seat installer assignments. [Lamontagne Aff. ¶ 33]. Similarly, Officer David Ellison previously served in the detective division and was asked to return to that assignment based on his exemplary performance. [Lamontagne Aff. ¶ 31].

In the spring of 2013, a detective position became available. [Lamontagne Aff. ¶ 25]. Other than his earlier conversation with Captain Lamontagne, Plaintiff took no other action to express interest in the detective position, or to attempt to secure this special assignment. [Haughton Dep. at 64]. Plaintiff claims that Defendants' modus operandi is to approach pre-selected officers and appoint them for special assignments, so there was no other action that he could utilize

to express his interest. [Haughton Aff. ¶ 17]. Lamontagne first approached Ellison about filling the detective vacancy, but he declined. [Lamontagne Dep. at 31]. Ellison had worked in the Detective Division from 2007 to 2011, and had been approached on various occasions prior to May 2013 to return to that assignment based on his exemplary performance. [Lamontagne Aff. ¶ 31]. Lamontagne testified that she believed Ellison declined the position because when he served as a detective he was assigned to a double homicide investigation that required him to work continuously, and Lamontagne believed that Ellison "was a little burnt out after that." [Lamontagne Dep. at 31].

After Ellison declined the offer to join the Detective Division, Lamontagne then approached Officer Joseph DiMauro, but he also declined. [Lamontagne Dep. at 28, 31]. Thereafter, Salvatore, Lamontagne, and Detective Sergeant Kevin VanderSloot met to discuss the detective vacancy and candidates therefor. *Id.* at 37-38. During that meeting, Lamontagne informed the others of Plaintiff's interest in the special assignment, and Plaintiff's qualifications for the detective assignment were discussed. *Id.* at 38-40. VanderSloot recommended offering the detective special assignment to Officer Pamela Young, a white woman. *Id.* at 36.

On May 7, 2013, Salvatore appointed Young to the detective position. [Lamontagne Aff ¶ 26; Dkt. 43-9]. At that time, Young had worked as a patrol officer for two years. [Lamontagne Dep. at 26]. Upon learning that Officer Young had been assigned to the Detective Division, Plaintiff wrote "equal opportunity" on the whiteboard inside the CPD squad room. [Haughton Dep. at 64-65]. He also submitted a written complaint, dated May 17, 2013, to Salvatore, alleging that he

had not received certain promotions or special assignments as a result of racial and gender discrimination. [Haughton Dep. at 64-65, 120; Dkt. 43-10]. Upon discovering Plaintiff's "equal opportunity" writing, Lamontagne discussed Plaintiff's concerns that he was unfairly being passed over for special assignments. [Haughton Dep. at 64-65]. Plaintiff had never previously submitted a written complaint of discrimination or raised such concerns with Lamontagne. [Haughton Dep. at 45, 122-23; Lamontagne Aff. ¶ 30]. Salvatore sent Plaintiff a memorandum dated May 24, 2013, in which he denied that Young had been chosen over any other officer on the basis of race or sex. [Haughton Dep. at 121; Dkt. 43-14].

Defendants argue that although Young has fewer years of experience as a police officer, her written reports had fewer errors than Plaintiffs' reports. Salvatore testified that the Plaintiff's reports had problems with spelling and grammar. [Salvatore Dep. at 55]. However, Salvatore agreed that the Plaintiff's writing was sufficiently clear, concise, and effective to qualify Plaintiff for an FTO position. *Id.* at 33-37; Dkt. 45-5. Plaintiff admits that certain of Plaintiff's incident reports have been returned to him following a supervisor's review for various deficiencies, but emphasizes that he has never been disciplined regarding his report writing or asked to attend report writing training. [Haughton Aff. ¶¶ 4-6]. Plaintiff also conceded that Young is a "good" incident report writer. [Haughton Dep. at 73].

Plaintiff has no personal knowledge of any instances of retaliation following his May 2013 complaint. [Haughton Dep. at 102]. Additionally, he has

never been suspended, lost a day's pay, or suffered a reduction in pay. *Id.* at 48. Plaintiff similarly has never witnessed Salvatore or Lamontagne uttering any comment he considered racist. *Id.* at 75.

### B. Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no factual issues exist. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315-16 (2d Cir. 2006) (quotation omitted). In addition, "the court should not weigh evidence or assess the credibility of witnesses" on a motion for summary judgment, as "these determinations are within the sole province of the jury." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).

"A party opposing summary judgment 'cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.' At the

summary judgment stage of the proceeding, [p]laintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (quoting *Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir. 1996)). "Summary judgment cannot be defeated by the presentation . . . of but a 'scintilla of evidence' supporting her claim." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010) (quoting *Anderson*, 477 U.S. at 251).

### C. <u>Discussion</u>

Plaintiff claims that he was denied a promotion on the basis of race or ethnicity. Upon review of all facts supported by evidence properly admitted to the record, the Court finds no genuine issues of fact that would preclude summary judgment.

Title VII claims for disparate treatment are evaluated using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010); *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996). "Under this framework, a plaintiff must first establish a *prima facie* case of discrimination." *Ruiz*, 609 F.3d at 491 (citation omitted). "The burden of proof that must be met to permit an employment discrimination plaintiff to survive a summary judgment motion at the prima facie stage is *de minimis.*" *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994). "[I]f the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate,

nondiscriminatory reason for the employee's rejection.'" *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802). "[S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

   1.  Prima Facie Case

Title VII makes it unlawful "for an employer . . . to discharge . . . or otherwise to discriminate against any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of disparate treatment, "a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Ruiz*, 609 F.3d at 491-92 (citation omitted).

The only step of the prima facie analysis at issue in this case is whether Plaintiff was denied a promotion under circumstances giving rise to an inference of discrimination. Evidence giving rise to an inference of discrimination includes (1) the employer's criticism of the plaintiff's performance in ethnically degrading terms; (2) invidious comments about others in the employee's protected group; or (3) the more favorable treatment of employees not in the protected group. *See Chambers*, 43 F.3d at 37. "Because an employer who discriminates is unlikely to leave a 'smoking gun' attesting to a discriminatory intent, a victim of

discrimination is seldom able to prove [her] claim by direct evidence, and is usually constrained to rely on circumstantial evidence." *Id.*

A plaintiff usually presents a prima facie case by "showing that the employer . . . treated [the employee] less favorably than a similarly situated employee outside his protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). The Plaintiff must be "similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Id.* (citations omitted). "Whether two employees are similarly situated ordinarily presents a question of fact for the jury." *Graham*, 230 F.3d at 39. However, "where a plaintiff seeks to establish the minimal prima facie case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001); *see also Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n. 2 (2d Cir. 2001) ("[A] court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met.").

Plaintiff argues that the promotion of Young, a similarly situated white officer, supports an inference that Plaintiff was denied a promotion on the basis of race. Defendants counter that because they offered the detective position to Ellison, a black officer, before promoting Young, Plaintiff cannot show that he was "treated less favorably than a similarly situated employee *outside [his] protected group*," *Graham*, 230 F.3d at 39 (emphasis added). Although "[t]he

mere fact that other members of a protected class were not discriminated against does not bar a discrimination claim, per se . . . it does pose a significant hurdle." *Hannah v. Wal-Mart Stores, Inc.*, No. 3:12-CV-01361 (VAB), 2016 WL 554771, at *10 (D. Conn. Feb. 11, 2016) (quoting *Rowe v. Bell Atl.*, No. 02-CV-0756 (DRH) (JO), 2006 WL 297710, at *3-4 (E.D.N.Y. Feb. 7, 2006)).  This is particularly true where, as here, the favorably treated black employee was offered the same position that the Plaintiff was denied, during the same hiring cycle, and by the same supervisors.  *See Hannah*, 2016 WL 554771, at *10 (holding that the inference of discrimination was weakened where members of the protected class were hired into some of the positions to which the plaintiffs applied).

However, interpreted in the light most favorable to the non-moving party, the evidence could support a conclusion that Lamontagne knew that Ellison would not accept an assignment to the detective division.  If Defendants knew that Ellison would not accept the detective position, the offer itself was not a genuine one.  It therefore does not bar the Court from concluding that the failure to promote took place under circumstances giving rise to an inference of discrimination.  An employer should not be permitted to insulate itself from liability for racial discrimination by making a bogus or insincere offer of employment to a member of a protected class.  Because a similarly situated white employee was promoted instead of the Plaintiff, and a genuine issue of fact remains regarding the genuineness of Ellison's offer, Plaintiff has met the de minimus standard for establishing a prima facie case of discrimination.  The Court next turns to the second step of the *McDonnell Douglas* analysis:  whether

Defendants have offered a legitimate non-discriminatory reason for failing to promote Plaintiff.

### 2. Legitimate Non-discriminatory Reason

Defendants claim that Young was assigned to the Detective Division over the Plaintiff for the legitimate, non-discriminatory reason that she displayed superior writing skills, and Plaintiff's written reports contained spelling and grammatical errors. In meeting its burden of articulating a nondiscriminatory reason for taking an adverse employment action, "an 'employer's explanation of its reasons must be clear and specific' in order to 'afford the employee a full and fair opportunity to demonstrate pretext.'" *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 105 (2d Cir. 2001) (quoting *Meiri v. Dacon*, 759 F.2d 989, 996-97 (2d Cir. 1985)); *see also Burdine*, 450 U.S. at 255 ("[T]he defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection."). However, "[a]ny legitimate, non-discriminatory reason will rebut the presumption triggered by the prima facie case. The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Paul v. Bank of Am.*, CIV 3:08CV1066J13A, 2010 WL 419405 (D. Conn. Jan. 29, 2010) (quoting *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1335–36 (2d Cir. 1997), *abrogated on other grounds*, *Reeves v. Sanderson Plumbing Prod.*, Inc., 530 U.S. 133 (2000)); *see also Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001) ("The defendant is not required to prove that the articulated reason actually motivated its actions.").

Plaintiff does not dispute that report-writing is an important component of the detective position, and the Defendants' judgment that Young was a better writer than the Plaintiff is a legitimate non-discriminatory reason for choosing to assign her to the Detective Division. The burden, therefore, shifts back to Plaintiff to present "admissible evidence that would be sufficient to permit a rational finder of fact to infer that the employer's proffered reason is pretext for an impermissible motivation." *See Vivenzio*, 611 F.3d at 106 (quotation and citation omitted).

### 3. Pretext

"To avoid summary judgment in an employment discrimination case, 'the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors.'" *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (quoting *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995)); *see also Nassar*, 133 S. Ct. at 2522–23 ("An employee who alleges status-based discrimination under Title VII need not show that the causal link between injury and wrong is so close that the injury would not have occurred but for the act."). Plaintiff may meet her burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *See Burdine*, 450 U.S. at 256; *accord Cooper v. Connecticut Pub. Defender's Office*, 480 F. Supp. 2d 536, 545 (D. Conn. 2007), *aff'd sub nom.*, *Cooper v. State of Connecticut Pub. Defenders Office*, 280

Fed. App'x. 24 (2d Cir. 2008). Conclusory and unsupported assertions that an employer's proffered race-neutral reason was a pretext for discrimination may support a grant of summary judgment in favor of the employer. *See, e.g.*, *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) ("[I]f the plaintiff has failed to show that there is evidence that would permit a rational factfinder to infer that the employer's proffered rationale is pretext, summary judgment dismissing the claim is appropriate").

Plaintiff argues that Defendants' proffered reason for choosing to promote Young instead of him is pretextual because the report-writing skills required of detectives is the same as that required of regular patrol officers, and Salvatore judged Plaintiff's writing skills "clear, concise and effective" in his FTO recommendation, [*see* Dkt. 45-5]. However, the relevant issue is not whether Plaintiff was a clear, concise and effective writer, but rather whether his writing skills were "so superior to those of [Young] that no reasonable person could have chosen [Young] over him for the job in question." *Shah v. MTA N.Y. City Transit*, No. 16-2477-CV, 2017 WL 1373273, at *2 (2d Cir. Apr. 13, 2017). An "employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Burdine*, 450 U.S. at 259. The fact that Plaintiff is a clear, concise and effective writer tells the Court nothing about the quality of his writing as it compares to Young's.

Assessments of writing skill are largely subjective, and "it is not the function of a fact-finder to second-guess business decisions or to question [an employer's] means to achieve a legitimate goal," *Dister v. Cont'l Grp., Inc.*, 859

F.2d 1108, 1116 (2d Cir. 1988). "An 'employer need not prove . . . that it made the wisest choice, but only that the reasons for the decision were nondiscriminatory.'" *Byrne v. Telesector Res. Grp., Inc.*, 339 F. App'x 13, 17 (2d Cir. 2009) (quoting *Davis v. State Univ. of N.Y.,* 802 F.2d 638, 641 (2d Cir. 1986)). "Only where an employer's business decision is so implausible as to call into question its genuineness should this Court conclude that a reasonable trier of fact could find that it is pretextual." *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 118 (2d Cir. 2010).

Salvatore testified that he believed Young had "superior report-writing skills" and that her "ability to perform . . . was outstanding." [Salvatore Dep. at 72]. Defendants' claim that they chose Young based on her superior writing skills is not implausible; undisputed evidence shows that the Plaintiff has made grammatical errors in his reports, and that Young is at minimum a "good" writer. [Dkt. No 43-5 at 70, 73]. The record contains no evidence to suggest that Lamontagne's and Salvatore's assessment that Young was a *superior* writer was "manufactured to avoid liability," *Dister*, 859 F.2d at 1116. The only admissible evidence of any racial animus in Plaintiff's workplace was a single comment made about a special assignment Plaintiff sought seven years before he sought the detective position, by an unknown person who does not appear to have played any decision making role with respect to the detective assignment. In addition, none of the criticisms of the Plaintiff are impermissibly discriminatory. Under these circumstances, the Court "may not second-guess the wisdom of the business decision," *Byrne*, 339 F. App'x at 17. *See also Fincher*, 604 F.3d at 726

(holding summary judgment appropriate where alleged discriminatory remarks "are at best just such a 'scintilla' in light of their offhand, conclusory nature and the lack of further support in the record for [the plaintiff's] claim").

Because Plaintiff can point to no genuine issue of fact tending to show that Defendants' proffered reason for offering the detective position to Young was pretext, summary judgment must be DENIED.

V.    Conclusion

For the foregoing reasons, Defendants' Motion to Strike [Dkt. 52] and Defendants' Motion for Summary Judgment [Dkt. 43] are GRANTED.  The Clerk is directed to close this file.


                                IT IS SO ORDERED.


                                _____/s/_____
                                Hon. Vanessa L. Bryant
                                United States District Judge


Dated at Hartford, Connecticut:  July 5, 2017